FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

AUG 27 PM 1:38

CLERK
SO. DIST. OF GA.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

SHARON L. HAGAN,

Plaintiff,

v.                406CV229

MASON DIXON INTERMODAL, INC.,

Defendant.

## ORDER

### I. INTRODUCTION

This employment discrimination action arises from the termination of Sharon Hagan by Mason Dixon Intermodal, Inc. (MDII) after Hagan suffered a stroke that forced her to take medical leave from work. In accordance with its medical leave policy, MDII terminated Hagan when she did not return to work within six weeks. When Hagan subsequently sought re-employment, MDII refused to rehire her, and claimed that her replacement outperformed her.

Hagan thus brought this Americans with Disabilities Act (42 U.S.C. 12101 *et. seq.*) (ADA) case, alleging that she had been disabled by her stroke, and MDII violated the ADA by terminating her based upon that disability. MDII moves for summary judgment on all claims.[1]

### II. BACKGROUND

MDII owns and operates a trucking company in Port Wentworth, Georgia. Doc # 11 at 1. Hagan commenced working for MDII in late 2002 as a billing/payroll clerk. The basic functions of her position included typing and filing. *Id.* at 2. She built a solid performance record with no reprimands. *Id.* at 2-3. In the Spring of 2004, however, MDI increased its number of drivers and Hagan had difficulty keeping up with the resulting increase in her work. Doc. # 19 at 24; # 24 at 7. By the Fall of 2004, she demanded that her supervisor hire someone to assist her or she would quit. *Id.* As a result, MDII hired Terry Sutherland as a temporary employee to assist her with billing/payroll duties. *Id.* at 9.

On 12/5/04, Hagan was hospitalized after suffering a stroke which substantially limited the use of her left hand and leg. Doc. # 11 at 3. On 12/6/04, she reported to MDII that she would be away from work due to the stroke. Doc. # 20 at 3.[2] Plaintiff also attempted to contact Cathy Cronos, of MDII's human resources department, to determine if she had any medical leave. *Id.* at 2.

Those phone calls initially went unreturned, and when Hagan finally did speak with Cronos, Cronos said she would have to call Hagan back to answer her questions. *Id.* at 3. But Cronos never called her back. *Id.* However, Hagan's daughter spoke with Cronos over the phone on 1/9/05, and at that time Cronos warned that Hagan's medical leave would expire soon. Doc. # 19 at 29. In fact, she further warned, Hagan

---

[1] This Court will apply the summary judgment standards recounted in *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003).

[2] MDII asserts that it has a medical leave policy of six weeks plus accrued, unused vacation time in which the employee's job will be held for her. Id. Hagan says that she never knew of this policy and that it was not in writing when she worked there. Doc. # 26 at 3.

would be discharged upon the expiration of her medical leave if she did not return to work. *Id.* at 32.

On 1/20/05, Hagan noted MDII's medical leave policy in her email to MDII's Regional Manager. Doc. # 19 at 34. Her email acknowledged Cronos's warning about Hagan's medical leave expiration and imminent discharge. *Id.* at 14. Hagan nevertheless insisted that she could possibly return to work, but not until 2/20/05. *Id.* When her medical leave expired on 1/21/05, MDII discharged her that day. Doc. # 20 at 5.

During Hagan's absence, Terry Sutherland assumed all of Hagan's billing/payroll clerk duties, albeit with some assistance from a co-worker. Doc. # 20 at 4. Within two or three weeks, however, she performed all of the duties on her own. *Id.* at 4-5. MDII thus informed Hagan, when Hagan later sought re-employment, that she would not be rehired because her replacement exhibited superior performance. Doc. # 11 at 4.

Terry Sutherland has served as the sole billing/payroll clerk since Hagan's medical leave and termination. Doc. # 21 at 5. The record shows that in 2005 and 2006 (when Sutherland has been the sole billing/payroll clerk), MDII managed an average of 32 and 27 drivers per month, respectively. *Id.* During Hagan's last year of employment, 2004, MDII averaged 28 drivers per month. *Id.* Again, Hagan asserted that the amount of work she performed was directly related to the number of drivers MDII managed. Doc. # 19 at 24. Therefore, the workload handled by Sutherland alone is similar to the workload with which Hagan requested assistance. *Id.*

Again, Hagan alleges that MDII terminated and refused to rehire her due to her disability, and this violates the ADA because MDII's proffered nondiscriminatory reasons are merely pretext to mask unlawful discrimination against an employee with a disability. Doc. # 11 at 4.

### III. ANALYSIS

#### A. ADA Standards

For the purposes of MDII's motion, the Court will assume that Hagan has established a *prima facie* case of employment discrimination within the ADA. Under the ADA, an employer may not "discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... the hiring ... or the discharge of employees...." 42 U.S.C. 12112(a). When a plaintiff relies on circumstantial evidence to prove a claim of intentional discrimination, as Hagan does in this case, the burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 972 (1973), should be applied. *Durley v. APAC, Inc.*, 236 F.3d 651 (11th Cir. 2000).

Under *McDonnell Douglas*, once the plaintiff establishes a *prima facie* case of discrimination, as the Court assumes Hagan has done for purposes of this motion, the burden of production shifts to the defendant-employer to proffer a legitimate, non-discriminatory reason for the challenged action. *Wascura v. City of South Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001). "[T]he employer's burden is merely one of production.... It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* at 1242-43 (internal quotations and citations omitted).

After the defendant proffers a legitimate, non-discriminatory reason for the challenged

2

action, the burden shifts back to the plaintiff to show that the defendant's reasons are mere pretext. *Wascura*, 257 F.3d at 1243. "In order to show pretext, the plaintiff must demonstrate that the proffered reason was not the true reason for the employment decision.... [The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson v. State of Alabama State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005). "[A] plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable." *Id.* (citing *Howard v. BP Oil Co.*, 32 F.3d 520, 526 (11th Cir. 1994)).

### B. MDII's Termination of Hagan

MDII proffered a legitimate, non-discriminatory reason for terminating Hagan on 1/21/05: she had not returned to work before the expiration of MDII's medical leave policy. Termination pursuant to a medical leave policy is a legitimate, non-discriminatory reason for discharging an employee. *Lewis v. Zilog, Inc.*, 908 F. Supp. 931, 952 (N.D.Ga.1995).

Hagan attempts to rebut MDII's proffered reason by asserting that: (1) Hagan had no knowledge of the company's policy prior to 1/9/05; and (2) MDII repeatedly failed to return the phone calls that she made in an effort to discover if there even was a medical leave policy. These assertions may be indicative of poor administration, but they are not sufficient evidence that would allow a reasonable trier of fact to conclude that MDII's proferred reasons for Hagan's termination are not believable. The undisputed facts show that Hagan had knowledge that she would be terminated if she did not return to work by the expiration of her medical leave. Hagan also communicated to MDII that she would not be able to return until at least 2/20/05, almost a month after her medical leave expired. And, Hagan has not provided any evidence purporting to show that MDII did not truly have such a medical leave policy. Therefore, MDII had a legitimate non-discriminatory reason to terminate Hagan pursuant to its medical leave policy.

Hagan also proposes that MDII's medical leave policy should be examined with "greater scrutiny" because it was unwritten. Her reliance on *Howard v. BP Oil Co.*, 32 F.3d 520, 526 (11th Cir. 1994), for this proposition, however, is misplaced. *Howard* involved an unwritten policy with "subjective and *ad hoc* criteria" for the awarding of BP dealerships. *Id.* The *Howard* court also stated that BP had different explanations for the awarding of each station. *Id.*

The situation there is not even roughly analogous to MDII's unwritten policy here. MDII's policy is an objective standard for medical leave -- 6 weeks plus any accrued, unused vacation time. There are no subjective or ad hoc criteria involved that should require greater scrutiny. And Hagan, for that matter, has simply failed to present any evidence suggesting that this is not MDII's true policy. Nor is there any evidence that MDII has selectively applied it. Because MDII's policy involves objective criteria, and there is no evidence to cast doubt on its bona fides, no greater scrutiny is warranted here.

MDII has proffered a legitimate, non-discriminatory reason for its termination of Hagan -- the expiration of her medical leave. Hagan has failed to produce sufficient evidence

3

that would cast any doubt that MDII's stated reason is not believable.

### C. MDII's Refusal to Rehire Hagan

MDII proffered legitimate, non-discriminatory reasons for its decision not to rehire Hagan -- (1) the superior performance of Hagan's replacement, Terry Sutherland, and (2) the lack of need for two employees to fulfill the billing/payroll position. The undisputed facts show that prior to Hagan's stroke she had difficulty handling her workload and even demanded that MDII hire someone to assist her. MDII hired Sutherland, who then assumed all of the duties as the billing/payroll clerk, after Hagan took medical leave. In that time, Sutherland learned the billing/payroll system and wound up able to handle the entire workload on her own. This is objective evidence of superior performance to Hagan, who prior to her stroke had demanded that MDII hire an assistant.

Because MDII wound up, at the end of the day, with one employee that could perform the billing/payroll position without assistance, it had a legitimate, non-discriminatory reason to prefer Sutherland over Hagan when Hagan asked to be rehired.

Hagan asserts that this cannot be true because: (1) she had never been disciplined for poor performance; (2) she was never told she was making too many mistakes; and (3) her sole performance evaluation was a good one. Hagan points to part of MDII's articulated reason -- that Sutherland made fewer mistakes than Hagan -- and insists that this is inconsistent with the fact that MDII had never disciplined Hagan, nor had complained of her performance.

While inconsistent statements can be circumstantial evidence that an employer's proffered non-discriminatory reason is false, *Howard*, 32 F.3d at 526, the fact that MDII never disciplined Hagan is not inconsistent with the overall proffered reason that Sutherland, Hagan's replacement, performed at a level superior to Hagan. The undisputed facts show that Hagan could not perform her job without an assistant -- before she took medical leave. Those facts also show that Sutherland could perform the same position without any assistance.

Hagan, meanwhile, has presented no evidence to rebut the fact that Sutherland is the sole employee performing the job that Hagan could not perform on her own. Likewise, Hagan has presented no evidence to rebut the fact that the workload handled by Sutherland alone is similar to the workload that Hagan needed assistance to perform. Therefore, no evidence has been presented to cast doubt on MDII's proffered legitimate non-discriminatory reason for refusing to rehire Hagan.

### IV. CONCLUSION

Defendant Mason Dixon Intermodal Inc.'s motion for summary judgment (Doc. # 19) is ***GRANTED***. Plaintiff Sharon Hagan's amended complaint doc. # 11) is ***DISMISSED WITH PREJUDICE***.

This 2?_ day of _August_, 2006.

_____
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA